Richard and Marion **ZEPPIERI,** Plaintiffs

v.

**NEW HAVEN PROVISION CO. et al, Defendants**

**No. 3:01 CV 1110(CFD).**

United States District Court, D. Connecticut.

Aug. 31, 2001.

Joanne S. Faulkner, Law Offices of Joanne Faulkner, New Haven, CT, for Plaintiffs.

Alfred J. Zullo, Zullo & Assoc., East Haven, CT, Richard William Callahan, Pite & Brown, Laurence P. Nadel, New Haven, CT, David Patrick Condon, Waller, Smith & Palmer, P.C., New London, CT, Peter D. Clark, Michael Cuff Deakin, Shelton, CT, for Defendants.

### RULING ON MOTIONS FOR SUMMARY JUDGMENT

DRONEY, District Judge.

The plaintiffs, Robert and Marion Zeppieri, bring this action against the defendants, New Haven Provision Co., John Ferranti, Joseph Recko, State Credit Adjustment Bureau, Inc. ("State Credit"), and Margaret LaBranche pursuant to 42 U.S.C. § 1983. The plaintiffs allege violations of their rights under the Fourth and Fourteenth Amendments to the U.S. Con-

stitution, as well as violations of state law. The plaintiffs contend that the defendants improperly executed on funds from their credit union account. The plaintiffs seek compensatory and punitive damages, injunctive relief, and reasonable costs and attorney's fees.

The parties have filed cross-motions for summary judgment. The plaintiffs' motion for summary judgment [Document # 57] is DENIED, and the defendants' motions for summary judgment [Documents # 52, 81, 89, 97] are GRANTED.

## I. Background

The parties do not dispute the following facts. In January 1994, defendant New Haven Provision Co. obtained a judgment of approximately $1,000.00 against the plaintiffs' business arising out of an unpaid debt.[1] New Haven Provision Co. retained defendant State Credit to recover the judgment.[2] State Credit applied for and obtained a bank execution from the small claims court in Connecticut, which was served by defendant Margaret LaBranche, a sheriff's deputy, on the plaintiffs' account at Charter Oak Federal Credit Union. Defendant LaBranche had to serve the execution twice in order to satisfy the judgment.

In subsequent correspondence with the defendants, the plaintiffs claimed that their credit union account contained only social security funds, which are exempt from execution under federal law.[3] They never affirmatively claimed an exemption as required under Connecticut law, howev-

er, and instead filed this action in order to recover those claimed funds.

The parties subsequently filed their motions for summary judgment, which the Court addressed at a hearing on June 7, 2001. The parties also submitted post-hearing memoranda.

## II. Summary Judgment Standard

In the context of a motion for summary judgment, the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that the moving party is entitled to judgment as a matter of law. See Fed.R.Civ.P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A court must grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact." Miner v. City of Glens Falls, 999 F.2d 655, 661 (2d Cir. 1993) (internal quotation marks and citation omitted). A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Aldrich v. Randolph Cent. Sch. Dist., 963 F.2d 520, 523 (2d Cir.1992) (internal quotation marks omitted) (quoting Anderson, 477 U.S. at 248, 106 S.Ct. 2505), cert. denied, 506 U.S. 965, 113 S.Ct. 440, 121 L.Ed.2d 359 (1992). After discovery, if the nonmoving party "has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof," then summary judgment is appro-

---

**1.** The judgment was against Richard Zeppieri d/b/a Zeppieri Bakery of Groton, Connecticut. The bakery apparently failed to pay for food ordered from New Haven Provision Co., a food wholesaler.

**2.** Defendant Joseph Recko is the owner and sole employee of State Credit. Defendant

John Ferranti is counsel for State Credit, who apparently advised State Credit in recovering the judgment.

**3.** The parties dispute whether the plaintiffs provided evidence that the only funds in the account were social security funds.

priate. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

"The nonmovant must do more than present evidence that is merely colorable, conclusory, or speculative and must present 'concrete evidence from which a reasonable juror could return a verdict in his favor.'" *Alteri v. General Motors Corp.,* 919 F.Supp. 92, 94–95 (N.D.N.Y.1996) (quoting *Anderson,* 477 U.S. at 256, 106 S.Ct. 2505). A party may not create its own "genuine" issue of fact simply by presenting contradictory or unsupported statements. *See Sec. & Exch. Comm'n v. Research Automation Corp.,* 585 F.2d 31, 33 (2d Cir.1978). When a motion for summary judgment is supported by documentary evidence and sworn affidavits, the nonmoving party must present "significant probative evidence to create a genuine issue of material fact." *Soto v. Meachum,* Civ. No. B–90–270 (WWE), 1991 WL 218481, at *6 (D.Conn. Aug. 28, 1991).

In ruling on a motion for summary judgment, the Court resolves "all ambiguities and draw[s] all inferences in favor of the nonmoving party in order to determine how a reasonable jury would decide." *Aldrich,* 963 F.2d at 523. Thus, "[o]nly when reasonable minds could not differ as to the import of the evidence is summary judgment proper." *Bryant v. Maffucci,* 923 F.2d 979, 982 (2d Cir.1991), *cert. denied,* 502 U.S. 849, 112 S.Ct. 152, 116 L.Ed.2d 117 (1991); *see also Suburban Propane v. Proctor Gas, Inc.,* 953 F.2d 780, 788 (2d Cir.1992).

## III. Discussion

The plaintiffs move for summary judgment as to the defendants' liability for execution of their exempt social security funds. The defendants oppose the plaintiffs' motion, and move for summary judgment on their own behalf, on the ground that their actions did not violate state or federal law. The defendants also contend that they are immune from liability under state and federal law. In addition, the parties agree that their motions for summary judgment present purely legal issues for the Court to resolve.

### A. Plaintiffs' Federal Claims

The plaintiffs allege in their complaint that the defendants are liable for "wrongful deprivation of property under 42 U.S.C. § 1983 and the Fourth and Fourteenth Amendments to the United States Constitution." Compl. ¶ 2. They also allege that the defendants' actions violated their constitutional "rights to due process and freedom from unreasonable seizure of personal property." *Id.* However, the plaintiffs do not allege in their complaint violations of any federal statutes.

Nevertheless, in their motion for summary judgment, the plaintiffs contend that the defendants deprived them of a federal right guaranteed not by the Constitution but by a provision of the federal Social Security Act, 42 U.S.C. § 407. They specifically contend that the defendants employed defendant LaBranche, a sheriff's deputy, to serve the bank execution and levy their exempt social security funds in accordance with Connecticut's bank execution statute. *See* Conn. Gen.Stat. § 52–367b. As explained by counsel for the plaintiffs at the summary judgment hearing, the plaintiffs maintain that the Connecticut statute is "perfectly constitutional" but nonetheless conflicts with § 407 in certain factual circumstances by requiring social security recipients to claim affirmatively exemptions of their social security funds from bank executions.[4] Section 407,

---

4. The plaintiffs concede that the Connecticut statute comports with § 407 in instances

the plaintiffs contend, provides that all exemptions of social security funds are immediately self-executing. Thus, they argue, such exemptions do not need to be claimed by social security recipients, at least in instances such as those presented in this case, where the account at issue only contains exempt funds.[5]

As a result, the plaintiffs contend that the defendants' employment of the execution procedures set forth in the Connecticut bank execution statute to levy the funds in their credit union account constituted an intentional deprivation of their federal statutory rights.

### B. 42 U.S.C. § 1983

■■■ The plaintiffs bring their federal claim pursuant to 42 U.S.C. § 1983. Section 1983 provides, in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the injured party in an action at law.

"To state a claim under § 1983, a plaintiff must allege that (1) the challenged conduct was attributable at least in part to a person who was acting under color of state law and (2) the conduct deprived the plaintiff of a right guaranteed under the Constitution of the United States." *Snider v. Dylag,* 188 F.3d 51, 53 (2d Cir.1999); *see also Dwares v. City of New York,* 985 F.2d

94, 98 (2d Cir.1993). Section 1983 also applies to deprivations of certain federal statutory rights, including those guaranteed by the Social Security Act, which occur under color of state law. *See Maine v. Thiboutot,* 448 U.S. 1, 4, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980).

#### 1. Action Under Color of State Law

■■■ The "acting under color of state law" requirement of § 1983 is analyzed by a two-part inquiry. First, an alleged deprivation of a federal right must have been caused during the exercise of a right or privilege authorized by law. *See Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 937, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982). Second, the person charged with committing the deprivation must be fairly characterized as a "state actor." *See id.*

In this case, there is little doubt that defendant LaBranche acted under color of state law by serving a bank execution on the Charter Oak Federal Credit Union, and by levying funds from the plaintiffs' credit union account, pursuant to her official duties as a sheriff's deputy.[6] *See, e.g., Finberg v. Sullivan,* 634 F.2d 50, 53–55 (3d Cir.1980) (involving a sheriff in a garnishment action). However, the Court concludes that the plaintiffs have failed to establish that the other defendants acted under color of state law.

#### a. State Actor Requirement

■■■ The plaintiffs concede that defendants New Haven Provision Co., John Ferranti, Joseph Recko, and State Credit

---

where it is unclear whether funds in a bank account are exempt from execution. However, they contend that the statute conflicts with § 407 in instances where a bank account contains only exempt funds.

**5.** As indicated, the defendants dispute whether the plaintiffs' account only contained exempt funds. *See supra* note 3.

**6.** The Court is somewhat perplexed by the plaintiffs' contention that defendant LaBranche is a "private party" and "not a government official." Pls.' Opp'n LaBranche Mot. Summ. J. at 2.

("the private defendants") are private parties. A private individual may be subject to liability under § 1983 if he or she willfully collaborated with an official state actor in the deprivation of a federal right. *See Dwares*, 985 F.2d at 98; *see also Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Accordingly, in concluding whether the private defendants may be subject to liability under § 1983, the Court must determine whether there is enough evidence for a reasonable jury to find that they jointly engaged with an official state actor in a conspiracy to deprive the plaintiffs of their federal rights. *See Scotto v. Almenas*, 143 F.3d 105, 114–15 (2d Cir.1998).

■ The plaintiffs argue that the private defendants acted jointly with other state actors, including defendant LaBranche, to deprive them of exempt social security funds. In support of this claim, the plaintiffs rely on the undisputed facts of this case: (1) New Haven Provision Co. retained defendant State Credit to recover a judgment; (2) State Credit applied for and obtained a bank execution from the small claims court; (3) defendant LaBranche served the execution in accordance with Connecticut's bank execution statute; and (4) the funds were levied after the plaintiffs failed affirmatively to claim an exemption. The plaintiffs also contend that defendant LaBranche violated the Connecticut statute by serving the execution more than seven days after receiving it from the small claims court, and by serving the execution twice at the direction of defendant State Credit.[7] However, the plaintiffs have offered insufficient evidence to create a genuine issue of mate-

rial fact as to whether the defendants unlawfully conspired or otherwise reached an agreement with a state actor subject to liability under § 1983.[8] *See Scotto*, 143 F.3d at 114–15 (holding that plaintiffs must present sufficient evidence to support an inference that an improper conspiracy took place); *Zemsky v. City of New York*, 821 F.2d 148, 151 (2d Cir.1987) (holding that "[a] person who is not a government official or employee acts under color of state law ... when he has acted together with or has obtained significant aid from state officials or has similarly engaged in conduct attributable to the state," and that vague and conclusory allegations are insufficient to establish such action) (internal quotation marks omitted), *cert. denied*, 484 U.S. 965, 108 S.Ct. 456, 98 L.Ed.2d 396 (1987). In particular, defendant Ferranti, counsel for State Credit, cannot be held liable under § 1983 simply for pursuing his client's rights to collect a civil judgment. *See, e.g., Gangemi v. Johnson*, No 98 CV 8470(SHS), 1999 WL 777861, *3 (S.D.N.Y. Sept. 30, 1999) ("[A]n attorney engaged in civil litigation on behalf of a private client cannot be said to be acting under color of state law."). Accordingly, the plaintiffs have failed to establish that the private defendants were "state actors" for purposes of the "acting under color of state law" requirement of § 1983.

b. Right or Privilege Authorized by State Law

■ The fact that the private defendants utilized Connecticut's statutory procedures for bank executions to levy the plaintiffs' exempt funds is also insufficient

7. The parties do not dispute defendant LaBranche's actions, although they disagree about whether her actions violated Connecticut's bank execution procedures.

8. Even assuming defendant LaBranche's actions violated Connecticut law, which the parties dispute, the Court concludes that her actions are insufficient as a matter of law to raise an inference of an unlawful conspiracy among the parties.

to subject them to liability under § 1983. The plaintiffs concede that Connecticut's bank execution statute is constitutional. They attack only the manner in which the private defendants employed the statute, that is, their employment of the statute given the particular facts of this case,[9] which is insufficient to create a genuine issue of material fact as to whether their alleged harm was caused by a right or privilege of the state. *See Dahlberg v. Becker,* 748 F.2d 85, 90 (2d Cir.1984); *cf. Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 940–41, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982).

Accordingly, the plaintiffs' motion for summary judgment is denied, and the defendants' motions for summary judgement are granted, as to the private defendants on the ground that they did not act pursuant to a right or privilege authorized by state law as required by § 1983.

### 2. Intentional Deprivation of a Federal Right

█ In addition, the plaintiffs' motion for summary judgment is denied, and the defendants' motions for summary judgement are granted, as to all defendants on the ground that they did not intentionally deprive the plaintiffs of a federal right. As indicated, the plaintiffs do not claim in their motion for summary judgment that the defendants deprived them of their constitutional rights. They claim only that the defendants deprived them of a federal right guaranteed by a provision of the federal Social Security Act, 42 U.S.C. § 407; and they claim that the defendants did so by adhering to Connecticut's statutory procedures for bank executions.

Section 407 provides, in relevant part:

(a) The right of any person to any future payment under this subchapter [of the Social Security Act] shall not be transferable or assignable, at law or in equity, and none of the moneys paid or payable or rights existing under this subchapter shall be subject to execution, levy, attachment, garnishment, or other legal process, or to the operation of any bankruptcy or insolvency law.

(b) No other provision of law, enacted before, on, or after April 20, 1983, may be construed to limit, supersede, or otherwise modify the provisions of this section except to the extent that it does so by express reference to this section.

42 U.S.C. § 407(a)-(b). The parties agree that this statute protects social security funds from execution and levy. They only disagree as to the proper procedures for exempting social security funds from execution and levy, and in particular, as to whether Connecticut's bank execution statute comports with § 407.

Connecticut's bank execution statute provides, in relevant part:

Execution may be granted pursuant to this section against any debts due from any banking institution to a judgment debtor who is a natural person, except to the extent such debts are protected from execution by ... laws or regulations of ... the United States which exempt such debts from execution.

Conn. Gen.Stat. § 52–367b(a). The statute further provides:

(d) Notice to debtor. Upon receipt of the execution and exemption claim form from the serving officer, the banking institution shall forthwith mail copies thereof, postage prepaid, to the judgment debtor at his last known address

---

**9.** As indicated, the plaintiffs challenge the Connecticut bank execution statute only to the extent that it is applied in instances where a bank account solely contains exempt funds. *See supra* note 4.

with respect to the affected accounts on the records of the banking institution. The institution shall hold the amount removed from the debtor's account ... for fifteen days from the date of the mailing to the judgment debtor and during such period shall not pay the serving officer.

(e) Claim of exemption. To prevent the banking institution from paying the serving officer, ... the judgment debtor shall give notice of a claim of exemption by delivering to the banking institution, by mail or other means, the exemption claim form or other written notice that an exemption is being claimed.... Upon receipt of such notice, the banking institution shall, within two business days, send a copy of such notice to the clerk of the court which issued the execution....

(f) Hearing. Upon receipt of an exemption claim form, the clerk of the court shall enter the appearance of the judgment debtor with the address set forth in the exemption claim form. The clerk shall forthwith send file-stamped copies of the form to the judgment creditor and judgment debtor with a notice stating that the disputed assets are being held for forty-five days from the date the exemption claim form was received by the banking institution or until a court order is entered regarding the disposition of the funds, whichever occurs earlier, and the clerk shall automatically schedule the matter for a short calendar hearing. The claim of exemption filed by such debtor shall be prima facie evidence at such hearing of the existence of the exemption.

(g) Disposition if exemption claimed. If an exemption claim is made pursuant ..., the banking institution shall continue to hold the amount removed from the judgment debtor's account for forty-five days or until a court order is received regarding disposition of the funds,

whichever occurs earlier. If no order is received within forty-five days of the date the banking institution sends a copy of the exemption claim form or notice of exemption to the clerk of the court, the banking institution shall return the funds to the judgment debtor's account.

Conn. Gen.Stat. § 52–367b(d)–(g).

The plaintiffs contend that § 52–367b conflicts with § 407 in certain factual circumstances by requiring a judgment debtor to complete and mail to his or her bank an exemption claim form in order to exempt social security funds from execution. They appear to construe § 407(b) to provide that no state law may modify the exempt status of social security funds as set forth in § 407(a). *See* Pls.' Opp'n La-Branche Mot. Summ. J. at 7. Further, they construe these provisions to create immediate, self-executing exemptions of for social security funds without regard to contrary state law provisions, including § 52–367b.

The plaintiffs rely in large part on the Third Circuit's decision in *Finberg v. Sullivan*, 634 F.2d 50 (3d Cir.1980). The plaintiff in that case challenged a judgment creditor's garnishment of her exempt social security funds, which had been accomplished in accordance with Pennsylvania's post-judgment garnishment statute. *See id.* at 51–52. In reversing the district court ruling upholding the garnishment statute, the Third Circuit held, in part, that the statute conflicted with § 407 of the Social Security Act and thus was void under the Supremacy Clause of the Constitution. *See id.* at 63. The court reasoned that the "overall objective of the social security system is to protect its beneficiaries from some of the hardships of existence," and the "exemption of benefits from legal process has the apparent pur-

pose of furthering this objective by ensuring that a beneficiary has uninterrupted use of moneys received as benefits." *Id.* (quotation marks omitted). The court also reasoned that, although Pennsylvania law otherwise prohibited the attachment of exempt benefits and established "liability" for their return, the garnishment statute conflicted with § 407 because it failed to provide adequate notice of garnishment or a prompt hearing on claims of exemptions. *See id.* Thus, the court concluded, the statute permitted the attachment and freezing of bank accounts without regard to whether they contain social security funds, which Congress had sought to prevent by enacting § 407. *See id.*

■■■ In contrast, Connecticut's bank execution statute does not contravene the congressional purposes of § 407. The statute requires banks receiving executions to send claim exemption forms promptly to all judgment debtors; and the statute includes a fifteen-day stay of execution from the date on which the forms are mailed to debtors. *See* § 52–367b(d). Connecticut's exemption claim form also provides notice to all judgment debtors concerning their exemption rights. *See* Mot. Summ. J. Defs. State Credit & Joseph Recko Ex. 2. It indicates specifically that social security funds are exempt from execution, and it prescribes the procedures for claiming an exemption of such funds. *See id.* In addition, if an exemption is claimed, Connecticut's bank execution statute provides for a prompt hearing prior to execution, which provision the plaintiffs do not challenge. *See* § 52–367b(f). In light of these procedures, the Court concludes that Connecticut's bank execution statute provides sufficient procedural safeguards to guarantee the uninterrupted use of social security benefits, and thus fulfill the congressional mandate of § 407.

■■■ In addition, contrary to the plaintiffs' contentions that social security exemptions are self-executing, other courts in this district have held that the exemption of funds from execution is not self-executing. Notably, in *Shrestha v. State Credit Adjustment Bureau, Inc.*, 117 F.Supp.2d 142, 145 (D.Conn.2000), the district court held that exemptions of protected funds from bank executions are not self-executing. The court stated in general terms: "Property is not automatically exempted; it may be exempted provided the debtor follows proper procedure. Connecticut provides a simple procedure for judgment debtors to claim exemptions when their bank accounts are seized." *Id.* (citing Conn. Gen.Stat. § 52–367b); *see also Shrestha v. Nadel*, No. CIVA 3:99 CV 554(AWT), 2001 WL 286852, at *4 (D.Conn. Mar. 21, 2001). The court also reasoned that, absent the affirmative exemption requirement of Connecticut's bank execution statute, "[s]ince exemptions are not self-executing," a defendant would not otherwise have a way to know whether a plaintiff's bank account contained exempt funds. 117 F.Supp.2d at 145.

■■■ Although the district court in *Shrestha* specifically addressed the "wildcard" exemption under the Connecticut statute, which permits a debtor to elect $1,000.00 of any property for exemption, 117 F.Supp.2d at 145, the Court concludes that the district court's reasoning in that case is equally applicable in this case. As indicated, the *Shrestha* court spoke in general terms concerning the nature of property exemptions, and this court concurs with that analysis. In addition, in either case the defendants cannot know what property is contained in a bank account, and which of that property is exempt from execution, until the plaintiffs have followed

the statutory procedures to claim it.[10] *See id.* Once the exemption is claimed, the execution can be released in a timely manner. *See id.* Employing such procedures to collect a debt is not deceptive or unfair, and does not violate federal law in circumstances such as those presented by this case. *See id.*

The particular facts of this case further illustrate the need for judgment debtors to claim exemptions affirmatively. The plaintiffs in this case have failed to provide sufficient evidence that their credit union account only contained exempt social security funds at the time of the execution. Although the plaintiffs' prior counsel sent a letter to the defendants with a direct deposit form from the Social Security Administration, which indicated that some of the funds in the plaintiffs' account might be exempt social security funds, *see* Mot. Summ. J. Defs. State Credit & Joseph Recko Ex. 4, the plaintiffs have also failed to present sufficient evidence that the levied funds were exempt social security funds. Nor have the plaintiffs responded to the defendants' repeated requests for evidence that the levied funds were social security funds; and the plaintiffs have not appeared for depositions at which such evidence might be adduced. In addition, although plaintiffs' counsel has indicated that the funds were exempt social security funds, the defendants are not required to rely on a debtor's assertion of his financial status-even through his counsel-but rather are entitled to a hearing. *See* 117

F.Supp.2d at 145. Absent a requirement that judgment debtors claim exemptions affirmatively, there would be no way for judgment creditors like the defendants in this case to recover debts without potentially subjecting themselves, regardless of their actions, to civil rights liability. There is no evidence that Congress intended such a result by enacting § 407 of the Social Security Act.

The Court therefore concludes that Connecticut's bank execution statute does not conflict with § 407 by requiring judgment debtors to claim affirmatively exemptions of their social security funds from executions. *Cf. Finberg*, 634 F.2d at 53. Thus, because the statute is not preempted by federal law, no reasonable jury could conclude that the defendants intentionally deprived the plaintiffs of a federal right guaranteed by § 407.[11]*

## IV. Qualified Immunity

The plaintiffs' motion for summary judgment is also denied, and the defendants' motions for summary judgment are also granted, in part, on the ground that defendant LaBranche is entitled to qualified immunity from any damages claims against her.[12]

 The law of qualified immunity is well settled in the Second Circuit:

> Qualified immunity shields government officials from liability for civil damages as a result of their performance of dis-

---

**10.** Indeed, the plaintiffs appear to recognize this issue in their attempt to distinguish the unlawful application of Connecticut's bank execution statute in this case from the lawful application of the statute in situations where it is unclear whether funds in a bank account are exempt from execution. *See supra* note 4.

**11.** The plaintiffs have not alleged any other federal statutory violations.

**12.** Although the Court recognizes that the private defendants, acting as judgment creditors, are not entitled to qualified immunity, they may be entitled to an affirmative defense of good faith or probable cause, and the plaintiffs may be required to carry additional burdens of proof. *See Wyatt v. Cole*, 504 U.S. 158, 159, 168–69, 112 S.Ct. 1827, 118 L.Ed.2d 504 (1992); *Pinsky v. Duncan*, 79 F.3d 306, 311–12 (2d Cir.1996).

cretionary functions, and serves to protect government officials from the burdens of costly, but insubstantial lawsuits. Government actors performing discretionary functions are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Even where the plaintiff's federal rights and the scope of the official's permissible conduct are clearly established, the qualified immunity defense protects a government actor if it was objectively reasonable for him to believe that his actions were lawful at the time of the challenged act. The objective reasonableness test is met-and the defendant is entitled to qualified immunity-if officers of reasonable competence could disagree on the legality of the defendant's actions.

*Lennon v. Miller*, 66 F.3d 416, 420 (2d Cir.1995) (citations and internal quotation marks omitted). Once a defendant raises a qualified immunity defense, the burden is on the plaintiffs to establish that immunity does not apply. *See Davis v. Scherer*, 468 U.S. 183, 197, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984); *Williams v. Smith*, 781 F.2d 319, 322 (2d Cir.1986).

■ In the context of a motion for summary judgment, a defendant is entitled to qualified immunity "when no reasonable jury, looking at the evidence in the light most favorable to, and drawing all inferences most favorable to, the plaintiffs, could conclude that it was objectively unreasonable for the defendant to believe that he was acting in a fashion that did not clearly violate an established federally protected right." *Lennon*, 66 F.3d at 420 (emphasis added and internal quotation marks omitted); *see also Behrens v. Pelletier*, 516 U.S. 299, 306, 116 S.Ct. 834, 133 L.Ed.2d 773 (1996) (indicating that quali-

fied immunity is an entitlement not to stand trial or face the burdens of litigation).

### A. Violation of a Clearly Established Right

■ In determining whether a particular right was clearly established at the time a defendant acted, a court must consider three factors: "(1) whether the right in question was defined with 'reasonable specificity'; (2) whether the decisional law of the Supreme Court and the applicable circuit court support the existence of the right in question; and (3) whether under preexisting law a reasonable defendant official would have understood that his or her acts were unlawful." *Jermosen v. Smith*, 945 F.2d 547, 550 (2d Cir.1991), *cert. denied*, 503 U.S. 962, 112 S.Ct. 1565, 118 L.Ed.2d 211 (1992).

Although the plaintiffs maintain that "it has been clear for decades that social security funds are zealously protected, and that any state law which interposes any obstacle to that protection is invalid under the Supremacy Clause," Pls.' Opp'n LaBranche Mot. Summ. J. at 7, for the reasons previously indicated, the Court concludes that the plaintiffs have failed to raise an inference that the defendants deprived them of the clearly established right they contend was violated. In other words, the plaintiffs have failed to demonstrate sufficiently that § 407 of the Social Security Act provides them with a clearly established right to self-executing exemptions of social security funds, or otherwise preempts the requirement of Connecticut's bank execution statute that they must affirmatively claim an exemption of social security funds. This is particularly true in light of the plaintiffs' failure to cite any authority in support of their distinction between the allegedly unlawful application of Connecticut's bank execution statute in

this case and the lawful application of the statute in situations where it is unclear whether funds in a bank account are exempt from execution. The Court therefore concludes that the plaintiffs have failed to establish that they have a federal right, in this context, that is sufficiently clear or supported by Supreme Court or Second Circuit law to overcome defendant LaBranche's qualified immunity defense. *See Doe v. Conn. Dep't of Children & Youth Servs.*, 712 F.Supp. 277, 283 (D.Conn.1989) ("[T]he right the official is alleged to have violated must have been 'clearly established' in a ... particularized[ ] and ... relevant sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right."), *aff'd*, 911 F.2d 868 (2d Cir.1990).

### B. Objectively Reasonable Action

 Even assuming defendant La-Branche, acting in concert with the private defendants, violated a clearly established federal right of the plaintiffs, the plaintiffs have failed to establish that her actions were objectively unreasonable.

The undisputed facts of this case indicate that defendant LaBranche served the plaintiffs' credit union with a bank execution that had been approved and issued by the small claims court in Connecticut. She served the execution and the exemption notice as required under Connecticut law on October 29, 1999.[13] The credit union then remitted the levied funds to her on November 12, 1999, after the plaintiffs failed to claim an exemption. In addition, she served the execution again on December 29, 1999 in order to levy the remaining

funds owed to the private defendants. The credit union also remitted those funds to her on January 12, 2000, after the plaintiffs failed to claim an exemption. She subsequently forwarded the funds to the private defendants, less her service fees. *See* Pls.' Local Rule 9(c)(1) Statement. However, she took no other actions in this case.

Contrary to the plaintiffs' contentions, it was not objectively unreasonable for defendant LaBranche to fail to "remind the financial institution that she could not, and did not intend to, execute upon any exempt funds," or to fail to post a bond before serving the bank execution. *Id.* Nor is the fact that she may have waited more than seven days to serve the execution after receiving it from the small claims court, or the fact that she served the execution twice, sufficient to render her action objectively unreasonable.[14] Consequently, in light of the purpose of qualified immunity to protect state officials from lawsuits challenging their decisions where they have a reasonable basis for those decisions, the Court concludes that defendant La-Branche's actions were objectively reasonable. No reasonable official in defendant LaBranche's position would have understood that her actions were unlawful. Therefore, she is entitled to a defense of qualified immunity.

### V. Remaining State Law Claims

The Court further declines to exercise supplemental jurisdiction over any remaining state law claims on grounds that it has dismissed all claims over which it has original jurisdiction. *See* 28 U.S.C. § 1367(c)(3); *Spear v. Town of West Hart-*

---

13. At the time defendant LaBranche served the execution and notice, Connecticut's bank execution statute had not been invalidated by any state or federal court.

14. Even if these actions violated Connecticut law, such violations cannot serve as the basis of a § 1983 action. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 121, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984).

*ford,* 771 F.Supp. 521, 530 (D.Conn.1991) ("[A]bsent unusual circumstances, the court would abuse its discretion were it to retain jurisdiction of the pendant state law claims on the basis of a federal question claim already disposed of . . ."), *aff'd,* 954 F.2d 63 (2d Cir.), *cert. denied,* 506 U.S. 819, 113 S.Ct. 66, 121 L.Ed.2d 33 (1992).

## VI. Conclusion

The plaintiffs' motion for summary judgment [Document # 57] is DENIED, and the defendants' motions for summary judgment [Documents # 52, 81, 89, 97] are GRANTED, for the preceding reasons.

The parties are directed to show cause within ten days as to why this case should not be closed.